NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1121
_____

UNITED STATES OF AMERICA

v.

ORLANDO CARINO,
                            Appellant
_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 10-cr-009-03)
District Judge:  Hon. Raymond L. Finch
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 9, 2014

Before:   CHAGARES, JORDAN and SHWARTZ, *Circuit Judges*.

(Filed: December 16, 2014)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

        Orlando Carino was convicted by a jury of Possession of an Unlicensed Firearm,

in violation of Virgin Islands law.  He appeals an order of the District Court of the Virgin

_____

        * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Islands denying his Motion for Judgment of Acquittal or New Trial or, in the alternative, Motion to Arrest Judgment. Because the District Court did not err when it retained jurisdiction over the local charge after dismissing all federal charges against Carino or when it allowed lay-witness testimony regarding the operability of Carino's firearm at trial, we will affirm.

## I.    Background

On January 30, 2009, Federal Bureau of Investigation ("FBI") Agent Thomas Drummond received an anonymous tip that a package containing drugs was being sent from El Paso, Texas, to St. Croix. Agent Drummond relayed that information to Drug Enforcement Administration ("DEA") Agent James Semrick, who then tracked the package through the United States Postal Service and found that it was scheduled to be delivered on January 31, 2009, to a Mr. Luis Castillo at a store called "Mailboxes 'N More" located in St. Croix. On the day of delivery, Agent Semrick, along with other agents, established surveillance at Mailboxes 'N More, awaiting retrieval of the package.

At approximately 1:00 p.m., the agents observed Carino enter the store and leave with a large box matching the description of the suspected package. Agent Semrick then stopped Carino to question him. Carino told the agents that he picked up the package for Stephen Garvey, who was already the subject of a criminal investigation. With Carino's consent, Agent Semrick opened the package and found two sealed 5-gallon buckets containing over twenty-five pounds of marijuana. Agent Semrick asked Carino if he had anything else in his vehicle and Carino directed him to a shotgun stored under the floorboard in the rear back seat area of his car. Although Carino had a license to carry

2

the shotgun, it had expired over four months earlier, and the license only permitted him to use the shotgun for home protection, meaning that carrying it outside of the home was prohibited. The agents arrested Carino and took him to the local DEA office for questioning.

Carino was eventually charged in a Second Superseding Indictment with Conspiracy to Possess and Distribute a Controlled Substance, in violation of 21 U.S.C. § 846 (Count I); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count II); Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2 (Count IV); and Possession of an Unlicensed Firearm, in violation of 14 V.I.C. § 2253(a) (Count V).[1] Carino went to trial with two co-defendants, Christopher Jacobs and the already-mentioned Stephen Garvey.[2] At the close of the Government's case-in-chief, Carino made a motion under Federal Rule of Criminal Procedure 29 to dismiss all charges against him. The District Court determined that there was insufficient evidence to link Carino to the conspiracy to distribute marijuana and therefore granted his motion with respect to the federal charges (Counts I, II, and IV). The Court nevertheless denied Carino's motion with respect to the local offense of Possession of an Unlicensed Firearm (Count V). After the dismissal of the federal charges, Carino moved to dismiss the local

---

[1] The original Indictment was filed on March 16, 2010 and the first Superseding Indictment was filed on August 19, 2010. The local charge against Carino was not added until the Second Superseding Indictment was filed on October 21, 2010.

[2] Carino was one of six defendants charged in an eight-count indictment as part of a larger drug conspiracy. Only Carino, Garvey, and Jacobs went to trial, and only Count V is relevant for the purposes of this appeal.

offense for lack of subject matter jurisdiction, arguing that the District Court no longer had concurrent jurisdiction of the local charge pursuant to 48 U.S.C. §1612(c), but the Court summarily denied that motion.

The jury convicted Carino on the local firearm charge. He filed a Motion for Judgment of Acquittal or New Trial, or, in the alternative, Motion to Arrest Judgment, all of which the District Court denied on June 13, 2013. Carino timely appealed.

## II.    Discussion[3]

Carino contends that the District Court erred by retaining jurisdiction over the local charge of unauthorized possession of a firearm after all of the federal charges had been dismissed and by allowing testimony regarding the operability of his firearm at trial. Because neither argument is meritorious, we will affirm.

### A.      District Court's Exercise of Jurisdiction Over Local Charge

The District Court of the Virgin Islands derives its jurisdiction from congressional action based on Article IV of the United States Constitution. *See Parrot v. Government of the Virgin Islands*, 230 F.3d 615, 622-23 (3d Cir. 2000) ("The District Court's power

---

[3] Ultimately we conclude that the District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the question of a district court's jurisdiction. *United States v. Gillette*, 738 F.3d 63, 70 (3d Cir. 2013). We likewise give plenary review to a motion for judgment of acquittal, viewing the record in the light "most favorable to the prosecution to determine whether any rational trier of fact could have found proof beyond a reasonable doubt." *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010) (internal quotation marks omitted). We review a denial of a motion for a new trial for abuse of discretion. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).

originates under Article IV, [§] 3, which authorizes Congress to regulate the various U.S. territories."). Congress enacted the "Revised Organic Act," 48 U.S.C. § 1541 *et seq.*, for the Virgin Islands to provide a basis for territorial government and 48 U.S.C. § 1612 to define the scope of the District Court's jurisdiction. Following the amendments in 1984 to the Revised Organic Act, the District Court has jurisdiction over all federal offenses and retains concurrent jurisdiction over local offenses "which are of the same or similar character or part of, or based on, the same act or transactions connected together or constituting part of a common scheme or plan" as a federal crime. 48 U.S.C. § 1612(c); *see also United States v. Gillette*, 738 F.3d 63, 71 (3d Cir. 2013) ("Congress specifically provided that the District Court would retain concurrent jurisdiction over charges alleging local crimes that are related to federal crimes."). In other words, "all that is required is that there be a sufficient nexus between the local charges and 'an offense or offenses against one or more of the statutes over which the District Court of the Virgin Islands has jurisdiction.'" *Gillette*, 738 F.3d at 71-72 (quoting 48 U.S.C. § 1612(c)).

Carino argues that the District Court did not have jurisdiction over the local offense of Possession of an Unlicensed Firearm because there was an insufficient nexus between that offense and the federal offenses – Possession with Intent to Distribute Marijuana and Possession of a Firearm in Furtherance of a Drug Trafficking Crime.[4]

---

[4] Carino also argues that the District Court improperly retained jurisdiction over the local offense after it dismissed the federal charges. He contends that in *United States v. Kember*, 685 F.2d 451 (D.C. Cir. 1982), the D.C. Circuit held that, when determining whether a federal court should retain jurisdiction over a local offense after the federal charges have been dismissed, the district court should "consider several factors" including whether "retention of the case is warranted by remaining matters of legitimate

5

According to Carino, the local offense arose not out of conduct relating to a drug conspiracy, but out of his failure to renew his firearm license and his failure to abide by the restriction on his license, which required the firearm to be maintained only in his home. He is, however, ignoring crucial facts that the local and federal charges have in common: he carried an operable firearm in his vehicle without proper authorization, drove to Mailboxes 'N More where he retrieved a box containing twenty-five pounds of marijuana, and placed the contraband in his vehicle and drove away. It is a sad truth that guns and drugs frequently and not by chance are possessed together, *United States v. Bonner*, 874 F.2d 822, 824 (D.C. Cir. 1989) ("[S]ubstantial dealers in narcotics possess firearms and ... such weapons are as much tools of the trade as more commonly recognized drug paraphernalia."(internal quotation marks omitted)). Carino possessed both here, in violation of territorial and federal laws. The District Court could properly view the local firearm offense as being closely related to at least the charge of Possession of a Firearm in Furtherance of a Drug Trafficking Crime. The Court therefore did not err in exercising concurrent jurisdiction over the firearm offense.

### B. District Court's Admission of Firearm Testimony

Whether a firearm is operable is an essential element of the charge of Possession of an Unlicensed Firearm, for which Carino was convicted. 23 V.I.C. § 451(d) (defining

---

federal concern." *Kember*, 685 F.2d at 454. But *Kember* explicitly stated that federal courts have the power to retain jurisdiction; the case simply provided a framework to guide lower courts as to when they should exercise that power. *Id.* ("We underscore, however, that this is a matter of sound exercise of the court's discretion, not a question of its power." (internal citation omitted)). Indeed, as we explained in *United States v. Gillette*, "the subsequent dismissal of federal charges does not impact the District Court's concurrent jurisdiction" over local offenses. 738 F.3d at 72.

firearm as a device "capable of discharging ammunition by means of gas generated from an explosive composition"). Carino argues that the District Court's admission at trial of testimony regarding the operability of his shotgun was improper because he was prejudiced by the untimely testing of the gun and disclosure of evidence concerning its operability and because expert testimony should have been required to establish operability.[5]

On March 23, 2010, about seven months before the government charged Carino with the local firearm offense, Carino had requested discovery on "all forensic or other tests or experiments, including but not limited to the test or experiments made of clothing of any person for the investigation of this case, and of any weapons alleged to be involved in this case." (App. at 537.) The government did not supplement its discovery responses after charging Carino with the local offense, claiming that it did not test the firearm until the evening after jury selection. Carino therefore argues that he was prejudiced at trial when Agent Semrick testified about operability of the firearm.

Carino's counsel objected to the untimely disclosure at trial, arguing that the defense was being "ambush[ed]" by the firearm operability testimony and that the prejudice stemmed from its inability to "verify and double check" the operability of the

---

[5] The standard of review of this latter argument is plain error, as Carino did not present this specific argument to the District Court. *See United States v. Syme*, 276 F.3d 131, 143 n.4 (3d Cir. 2002) (applying plain error review where defendant-appellant presented a new argument on appeal after moving for acquittal or for a new trial before the district court); Fed. R. Crim. P. 52(b) (permitting courts to consider plain error even if not brought to the court's attention). "Under the plain error standard, a reviewing court may reverse the district court only if it finds that (1) an error was committed; (2) the error was plain, that is, clear and obvious; and (3) the error affected the defendant's substantial rights." *Syme*, 276 F.3d at 143 n.4 (internal quotation marks and alterations omitted).

firearm with its own expert. (App. at 123, 129.) The District Court responded by asking Carino's counsel how long a continuance would be necessary to allow the defense to retain an expert and independently test the firearm. The defense asked for a day to prepare and the District Court granted a half-day continuance. As it turned out, the continuance was sufficient for the defense to test the firearm, and any prejudice that may have existed as a result of the government's untimely disclosure was cured.[6]

Carino's second argument is also unpersuasive. He says that the District Court erred in allowing Agent Semrick to testify as to the operability of the firearm because Virgin Islands courts have required expert testimony to establish that element of the offense. The two cases he cites for that proposition, however, do not hold or even suggest that expert testimony is required. Instead, as the District Court noted, Agent Semrick's testimony as to the operability of the firearm – namely that he inserted two 12-gauge shotgun shells into the firearm, pulled the trigger, and witnessed the explosion when the shots were fired – was sufficient for a rational juror to find that Carino's firearm was "capable of discharging ammunition" as required by § 451(d). *See United States v. Mike*, 655 F.3d 167, 174 (3d Cir. 2011) (concluding that testimony by postal inspectors at trial that they "dry-fired" the firearm was sufficient to show operability); *United States v.*

---

[6] While the prejudice here was, in the end, mitigated, that does not mean that the government was without fault in delaying the testing of the shotgun. Carino could have, and should have, pressed the point earlier, but we agree with the District Court that the government knew that the firearm's operability was an element of the charged offense, and should have prepared and provided relevant discovery to the defense prior to trial. (*See* App. at 130 ("You're both at fault. You knew well what the element was. It's assumed that you would have prepared that. It's assumed that they would have asked for that specific piece of evidence before. You're both at fault.").)

*Allen*, 235 F.3d 482, 492-93 (10th Cir. 2000) (upholding conviction where agent test-fired firearm with blank ammunition).

**III.   Conclusion**

We will therefore affirm the District Court's order denying Carino's Motion for a Judgment of Acquittal or New Trial, or, in the alternative, Motion to Arrest Judgment.